WIDOW AND HEIRS OF CARLILE POLLOCK *v.* THE CITIZENS' BANK OF LOUISIANA.

The Act of the Legislature of 1852, which relieved the Citizens' Bank from the decree of forfeiture of its charter, while it restored the "rights and privileges" of the corporation, is not to be understood as having restored those of the individual corporators, so as to entitle the original stockholders to a credit at the hands of the Bank, as at present organized, of thirty-three dollars per share, as a loan payable in instalments, according to the original charter.

APPEAL from the Second District Court of New Orleans, *Morgan*, J.
G. *Legardeur*, for plaintiffs and appellants. A. *Pitot*, for defendants.

BUCHANAN, J. The plaintiffs, original stockholders of the Citizens' Bank to the extent of 215 shares, claim to be entitled to a credit, at the hands of the Bank, as at present organized, of thirty-three dollars per share, as a loan repayable in annual instalments of two per cent., according to the provisions of the Act of April 1st, 1833, which was the original charter of the Bank.

The defendants plead that the original charter has been forfeited, and, although since revived, yet that it has been so modified, with the consent of the stockholders, as to preclude the latter from claiming, as a right, the credit accorded to them by the original charter; moreover, that it would be a violation of the obligations of the Bank towards the State and towards the holders of the bonds of the Bank, as well as a breach of faith towards the subscribers of a cash stock in this institution, to grant the mortgage stockholders a credit such as is asked.

The argument of the learned and able counsel for plaintiffs, may be summed up in the two following propositions:

1st. The Act of the Legislature of 1852, No. 141, entitled "An Act for the relief of the Citizens' Bank of Louisiana," in its first section, declares, that the Bank is relieved from the decree of forfeiture of its charter, and the administration and control of the affairs of said Bank shall be restored to the stock-

holders thereof, in the same manner, with the same rights and privileges, to the same extent, and with the same restrictions, as if the said decree of forfeiture had never been rendered: and consequently, one of the rights and privileges of each stockholder, before the decree of forfeiture rendered, being a credit to the amount of a certain proportion of his stock, estimated at par, each stockholder is now entitled to the same credit.

2d. Plaintiffs were not a party to the compact of the 26th July, 1853, between the mortgage stockholders and the cash stockholders of the Citizens' Bank, and are not bound by said compact.

Both these propositions are fallacies.

I. The Act for the relief of the Citizens' Bank recites that the charter of the Bank, under which plaintiffs claim, had been forfeited by a judgment ten years previously. Of this fact, indeed, there is no question. It is likewise a matter admitted on all hands, that the State is largely interested in the success of the Citizens' Bank, being bound, as the preamble of the Act declares, for the payment of upwards of six millions of bonds negotiated for the benefit of the Bank. The preamble proceeds to state, that the managers, appointed by the State for the Citizens' Bank, have represented that the stockholders will be enabled to secure the State from the risk of loss, if they be restored to the control and administration of the affairs of the Bank, with the rights, privileges and immunities possessed by said Bank at the date of the decree of forfeiture rendered against it in the First District Court, &c.

In consequence of this representation, the Act declares, in its first section, the charter revived, as stated in the argument of plaintiffs' counsel. Now, what are the "rights and privileges" which "shall be restored?" Taking the first section in connection with the preamble, of which that section is but the repetition and the complement, it is obvious that we are to understand the rights, privileges and immunities *possessed by the Bank under its forfeited charter*—privileges so immense, that they constituted a legislation apart for this favored corporation. For *it*, the Article 2412 of the Civil Code did not exist, neither did the insolvent laws, neither the statute of distributions. No legal incapacity could be pleaded by its debtors. No exceptional jurisdiction could obstruct the collection of debts due to it. See sections 24, 25, 26, Acts of 1833, p. 190.

Not only is it clear from the context that the "rights and privileges" are those of the corporation, and not of the individual incorporators, but the assurance of the State against loss, the avowed object of this law, must have been defeated by the opening of a credit on the books of the Bank, in favor of each stockholder, to the extent of one-third of his stock at a par estimate; stock which, so far from having any value in the market itself, depreciated the value of any property on which it was secured.

Again: we find in the second section "that this Act shall not take effect until the Citizens' Bank of Louisiana shall have restored to the Governor of the State bonds of the State to the amount of eight hundred thousand dollars, and shall have raised, by contribution from its stockholders, independently of its present means, additional assets for at least eight hundred thousand dollars." The other sections of the Act contain provisions having reference to the conditions and revival of the corporation, contained in the 2d section. There is no evidence in this record that those conditions were ever fulfilled; that the sixteen hundred thousand dollars *bonus*, in bonds and cash, was ever forthcoming. It is certain that the corporation, as we now find it, is the offspring of the legis-

lation of the succeeding session, (1853,) which will be presently the subject of our examination.

The Act of 1852 appears to have failed of its purpose of resuscitating the defunct corporation. For this, as well as for the reasons inherent in the Act itself, it appears to us that no weight is to be attached to the argument derived from the general and somewhat vague expressions of the first section of that Act.

II. On the 28th April, 1853, was passed an Act to authorize the Citizens' Bank of Louisiana to convert shares secured by mortgage into cash shares.

This Act made a radical change in the constitution of the Bank, by divesting it, in part, of its character of a joint stock association of the owners of real estate, trading upon a capital raised by the negotiation of bonds secured by the hypothecation of lands and slaves. It provided, that the Directors might raise a million of dollars, by opening books of subscription for ten thousand shares of one hundred dollars each, in which subscription the preëxisting or mortgage stockholders should have a preference to the extent of one share for every fifteen already possessed by them; said ten thousand shares to be paid in full, at the time and in the manner to be determined by the Directors, in order to constitute a cash stock.

The second section enacts, that those who shall become the owners of said cash stock, shall be designated as the cash stockholders of the Bank, and shall, besides any yearly interest which they may receive on the stock so paid in, if any be allowed, share in the profits or losses of the Bank in the proportion of the amount of said stock paid in, to the amount of the available banking assets of the Bank, to be estimated and fixed by the Board of Directors, and on such terms and conditions as shall be fixed by said board; the same, when so determined, to be binding on and between the holders of said cash stock and mortgage stock respectively.

The third section enacts, that subscriptions to the cash stock shall be received at the office of the Bank in New Orleans, under the superintendence of the Board of Directors, after thirty days previous notice of the terms and conditions agreed upon by said board, which shall be considered as binding upon the subscribers.

And by section fifth, the Act to be in force only after having been accepted, in writing, by a majority in number and amount of the stockholders of the Citizens' Bank of Louisiana.

It is proved that this Act was accepted by three hundred and eighty stockholders, owning eighty-six thousand nine hundred and ninety-two shares of stock, and rejected by three stockholders, owning four hundred and fifty-eight shares; the total number of stockholders at the time being six hundred and ninety-six, and the total number of shares, one hundred and forty-three thousand eight hundred and ninety-two. Therefore, there was a majority in number and amount, of all the stockholders and stock, which accepted. And it is admitted, that the plaintiffs were among those stockholders who accepted.

After this acceptance of the Act, which was then by its terms in force, the Board of Directors, as they were authorized and required to do by the second section, fixed, on the 26th July, 1853, before opening books of subscription, the terms and conditions of a compact and agreement as to the manner of administering the affairs of the Bank and dividing its profits between the cash stockholders and the mortgage stockholders; which compact and agreement,

after being formally ratified by a committee of the mortgage stockholders, was advertised during the term of thirty days, in six different newspapers, as the basis of subscription to the cash stock. The whole of the ten thousand shares of cash stock were thereafter subscribed, and the Bank went into operation under the amended charter of the 28th April, 1853, and in the mode and upon the terms and conditions fixed by the articles of compact and agreement of the 26th July, 1853, adopted in conformity and obedience to that statute, and which are to be considered as the constitution of the corporation at the present time.

POLLOCK
*v.*
CITIZENS' BANK.

There is no doubt that all the mortgage stockholders, including the plaintiffs, are bound by that compact. It is in vain that the plaintiffs claim to stand aloof and to repudiate the nearly unanimous assent of their fellow-corporators. See on this subject Angell and Ames, on Corporations, chapter 13, section 7; 2d Kent's Commentaries, lecture 33d, page 236. Upon these authorities, plaintiffs would be bound, even had they been among those few corporators who voted to reject the amendment of the charter. *A fortiori* are they bound, having voted to accept it.

Judgment affirmed, with costs.

Mr. Justice VOORHIES being a stockholder in the Bank did not sit on the trial of this case.